Good morning, your honors. My name is Stephen Gordon and I represent Anthony Gattineri, the appellant seeking reversal of the grant of summary judgment by the district court on five separate counts. First, there was no illegality in the contract between Mr. Gattineri and Wynn that would prevent its legal enforcement. Second, the terms of the contract were sufficiently clear for a trier of fact to determine not only the existence of the contract, but with Mr. Gattineri to rely on Wynn's top executive in Massachusetts. Counsel, let me ask you, the issue of the illegality of the contract, that is an issue of very important Massachusetts public policy. And I know the parties have not requested it, but isn't this an issue that should perhaps be certified to the mass SJC? Actually, your honor, this matter has been ruled upon by the Massachusetts Supreme Judicial Court after the entry of summary judgment in this case. The timing was unusual. Counsel, we've all read the decision. It's true, the district court didn't have the benefit of it. I don't think it resolves the illegality question here. I think it further complicates it. And to my mind, it suggests that these policy questions about the authority of the commission under different circumstances is a matter better resolved by them. There is also the question of the authority of the commission over things like the statute of rights, things like purchase price and side agreements that may or may not affect the purchase price. There are questions about the authority of the commission to affect the purchase price in light of the need for environmental cleanup on the site, which apparently was not contemplated in the original $75 million deal. And then there is the question that was involved in the SJC case about whether there was some possible involvement of someone with a criminal record because of a purported debt that your client owed. The question of the SJC merely said, can't utter some re-judgment on that quite yet. It needs to go back for some further development. So I'm sort of in the same boat that Judge Healthy is. These answers are not at all clear to me. So is there a problem with asking the SJC to make a point to answer these questions, which are going to affect not only this case, but they have all sorts of licenses that apparently are going to be sought for online gambling, horse racing, all sorts of things like that. So I know you didn't come in prepared to address that point, and perhaps you feel that you've been a bit sandbagged here, but if you care to say anything now, I think it would be helpful if you prefer not to. That's fine too. No, I can say things. Rare that a lawyer has nothing to say, Your Honor. In this particular case, I think that it's unnecessary. I mean, obviously, if it's the view of the panel that this matter should be referred to the Massachusetts Supreme Judicial Court, there's nothing I can do about that. I think it's unnecessary based upon the expression of the SJC in the FBT versus Mass Gaming Commission case, which involved the exact same section of the exact same statute that we believe the district court misinterpreted, involving the exact same proceedings before the Massachusetts Gaming Commission, involving the exact same sale of the exact same land for the exact same casino. And the SJC found in that case that there was nothing to prohibit on the summary judgment basis, which is what we have here, there was nothing to prohibit FBT from recovering from, nothing in public policy to prohibit FBT, the seller, to recover from a governmental agency, the Gaming Commission. So certainly there is nothing in public policy to prevent Mr. Gattaneri, who is just a member of the seller. Those are the facts in that case. They're not identical to those in this case. Am I correct? Yes. They're certainly, well, the facts are not identical because the cause of action there is a regulatory taking. But if there was any illegality involved that would prevent FBT, the seller, from recovering from the Gaming Commission, then if there is no such illegality there, there certainly cannot be any illegality in Mr. Gattaneri recovering from land. What you're saying is that using that opinion, we could reasonably construe how the SJC would rule in this case. I believe you can very reasonably construe that. That's why I said in response to Judge Lynch's invitation that I did not think it was necessary to refer this case to the SJC. Just to play that out, this is a day for side deal cases. And so I guess if I'm understanding it, the idea is the deal that we're talking about here is a side deal between two private parties. That is correct, Your Honor. It doesn't affect purchase price. That is also correct. And so there's just no way to read this statute in light of the SJC's construction of the statute to suggest that it's illegal to make a side deal. That is absolutely correct, Your Honor. And I am a little bit prepared on this issue. In the brief, we've cited the case of Beacon Hill versus Toscano's Restaurant. But in that case, there is cited the case of Nussenbaum versus Chambers, reported at 322 Mass 419. And there, the Supreme Judicial Court said, and I quote, courts do not go out of their way to discover some illegal element in a contract beyond that which is necessary to uphold the policy of the law. Well, the SJC has told us that the policy of the gaming statute, upholding the policy of the gaming statute, does not require preventing FBT from recovering against the Gaming Commission. It certainly can't require that Mr. Gattaneri be prevented from getting the benefit of his bargain. Just with the textual point, which the SJC, like many courts, does want us to look at the text, your contention is that this phrase, under a gaming license, just makes it clear that this statute is not reaching what I'm calling a side deal? Or is there some other text that you think I should be focusing on? No, that is correct, Your Honor. The statute says that the statute restricts transactions with respect to an interest in a gaming license. Mr. Gattaneri never had any interest in any gaming license, never claimed any interest in a gaming license. Wynne needed something outside of that from Mr. Gattaneri and made an agreement to obtain that in exchange for an easily ascertainable amount of money, and they haven't met that agreement. Again, we're at the summary judgment stage, and I think that throughout the district court's decision there are numerous determinations of fact. Not determination as to whether there are determinations, findings, without a trial on those facts. So if we were to agree with you on the illegality issue, or I suppose a post-certification, the SJC were to agree with you on the illegality issue, we had the question back. Just walk me through what you think happens to your fraud claim and your Chapter 93A claim if we also agree with you that a reasonable trier of fact could determine that the terms were definite enough to permit there to be a contract. I'm just having trouble. Those claims get tried to a jury, or perhaps to the judge in the 93A. But I'm trying to figure out how the fraud claim is properly presented. If your theory of the case is that there's a contract because the terms were definite, what's the fraud claim then? The fraud claim is that if, in fact, the jury finds that Wynne, through its president, Mr. DeSalvio, had no intention of meeting the terms of the contract... Wouldn't that just be breach? Why would it be fraud? I think, well, these are alternative claims, obviously. We're not looking for a double recovery. So the alternative claim is that then there was no contract, and then you can bring fraud? The alternative claim was if there was no contract. But how does the fraud claim work if the ground for finding no contract is that there weren't definite terms? What would be the reliance? The reliance is that Mr. Gattineri handed over a certificate that he was not required to hand over. But there were no terms. If the terms were too indefinite, how could the fraud claim proceed? That would be a measure of damages, Your Honor. We believe... Why wouldn't it go to the reliance, which would be an element of the fraud claim? Well, of course it would go to reliance, but again, that's an alternate... What would there to be rely on if... You see what I'm saying? I don't understand how your client could have been relying on indefinite terms. He did not rely on indefinite terms. He relied on definite terms. If then there's a contract, and then you say you don't want double recovery, so then we drop out the fraud claim. If a determined... But at what point in the proceedings is the determination made that there is a definite contract? What I'm saying is either... It doesn't matter because if the... I'm just saying how is this going to be presented back to a jury? If you win, it goes back to a jury, right? So the So how is that actually going to work? Because if the legality issue has been decided, then there's two possibilities. Either there were definite terms or there were not definite terms. If there were definite terms, you have a breach claim, and you say, I'm not trying to double recovery, so I don't care about my fraud claim. If there were not definite terms, how can the fraud claim state a claim legally? Because I don't see what the basis for reliance would be. That may be, Your Honor. But if in fact... And today is also a day for verdict slips. So it may well be that both claims are tried to the jury, and the jury is asked to determine whether there was a sufficient definiteness for a contract. And if so, skip the questions with respect to fraud. And if not, skip them also, because there's no claim. Well, I still think... So that's why I'm asking, what is the basis for the claim succeeding if the terms were not definite? The basis of the claim is reasonable reliance on the representations of Wynn's president to the detriment of Mr. Gattineri. Even if they were indefinite? Well, I suppose a jury could find that the contract was somehow indefinite, but the consequences, the economic consequences of the fraud are definite. Okay, now do the same analysis for me with respect to the Chapter 93A claim. Are you saying that if the contract claim could succeed, you also could recover under Chapter 93A? Yes. Okay, and how does that work? Well, first of all, if there is a violation of 93A, you would have the potential, obviously, for multiple damages. Well, I know why you want it to happen. I'm turning to you. What would be the Chapter 93A violation in a case in which breach was found? Well, in a case in which breach was found, we have... It's not just a pure breach. In a case in which breach was found, we have the issue of Mr. Gattineri's change of position, which justifies an independent 93A claim. And in this court's Damon v. Sun Company case, the court said whether a particular set of facts in their factual setting is unfair or deceptive is a question of fact. So I think we're entitled to try that, not attempt, but have a trial on that and see where the 93A claim goes and to see whether there is a violation in addition to the breach of contract. There is also a violation of Chapter 93A if in fact it's found that not only did Winn make the contract, but had no intention of honoring the contract when the time came to do so. I would like to speak, and I know I have very limited time, I would like to speak to the interests of justice in this case. This is a very difficult situation for me. I've never been in this position before. I first appeared before this court on November 6, 1973. I've had the pleasure of appearing before this court dozens of times thereafter, won some, lost some. Never before has there been even a hint of anything unfair, unjust, or unseemly. In this case, the ex parte supplementation of the record a year after the argument on the motion for summary judgment is all three of those things. It's unfair because I never got a chance to further supplement the record, to speak to the... Didn't you accept the statement of uncontested fact? There was no objection to that, and that's in that statement. Your Honor, that's one page of 341 pages. One page. In addition to which, it's not a question of the truth. In this case, there is a question of the truth. There is a question of the truth. There is a case in this court called Haller, cited in Enamorati, which is a very well-known case, in which it says, the court says, nothing herein is to be taken to suggest that it is proper for a prosecutor to communicate facts about the defendant to the judge ex parte so long as they are true. The unfairness is... That was one page of 341. I don't know what else was on that page. But what that says is, the unjust part is, the only thing that proves, Your Honor, is that the district court did in fact consider the secret supplement, secret record supplementation in its decision. And there is only one cure for that taint, and that is that the decision, the summary judgment be reversed and remanded for trial, not remanded for further consideration. That's just a blanket. Summary judgment decision, so we can look at it de novo for all purposes. But you can't remove, you can't undo what was done. You can't remove the taint that was created. You can, there are all sorts of things that you can do, but only a remand for trial in this case will, in this case... Take away, we don't consider that taint, but still on the record, we reached the same decision on different grounds or... I don't know how you can do that, Your Honor. You also have the finding, the companion's finding by, apparently, by the district judge. And don't forget, the vast majority, the majority of the 341 pages were transcript pages of Mr. Gatnery's testimony, and the district judge found negatively on the credibility of Mr. Gatnery without ever seeing him in the courtroom. So I just don't think that you can, you cannot remove that. You cannot, unless this case is remanded for trial, justice cannot be seen to have been done. And I would ask you to do exactly that, Your Honor. Any further questions? Thank you. Thank you very much. Thank you, counsel. At this time, Mr. Starr, please introduce yourself on the record to begin. Good morning. Samuel Starr for the Defendant Appellees, WINMA, LLC, and WIN Resorts. And, counsel, just very quickly, the same question I asked the other side. What will be your client's position as to certification of these issues of illegality to the Mass SJC? As appellant's counsel said, certainly if that's the decision the court reaches, that's your decision. We don't think it's necessary. I think that the FBT decision arises in a completely different context than this case. The FBT decision was a decision on a regulatory taking case. That was a claim, regulatory taking. And the Superior Court granted summary judgment based on the argument being advanced by the Gaming Commission, that in a regulatory taking case, you only need to decide one prong of the three-prong test, investment-backed expectation. And based on that, summary judgment was granted. The SJC said no. While we agree with you that the plaintiff can't meet its burden on investment-backed expectation, it's a three-prong test. And you have to go back and consider the other two prongs. That's the end of that decision. That's what that decision stands for. It certainly does not say in that decision that a secret side deal for millions of dollars is lawful. Absolutely not. That decision does not tell us anything about the enforceability. Your argument is that the text of the statute shows that the deal is illegal. The deal is illegal for three reasons. It violates 21B, it violates 21C, and it plainly contravenes the public policy of the statute. Independent of whether it violates 21B and C? Yes. Yes. Each of the three is a separate basis to determine if it's unenforceable. Okay. Let's go through. I didn't understand you until you developed an argument about how if it doesn't violate 21B or C, it nonetheless violates public policy. The district court didn't rely on that, did it? The district court concluded that it violated public policy as well. Because it violated 21, one of the statutes. No, I don't believe so, Your Honor. I think it was three separate... So let's say the statutes don't cover this. Pardon me? Let's say neither statute covers this type of deal, doesn't speak to it. Yes. Where are you getting the public policy from? Sure. The introductory statement to the Gaming Act, the very, very first statement in the Gaming Act declares that ensuring public confidence in the integrity of the gaming licensing process and in the strict oversight of all gaming establishments through a rigorous regulatory scheme is the paramount policy objective of this chapter. Ensuring public confidence in the integrity of the gaming licensing process is the paramount policy objective of this chapter. A secret handshake deal in plain violation of conditions imposed in December of 2013 violates that public policy. What's the condition imposed? What's the condition it violated? That the deal be for $35 million and nothing more. But the deal was. What the plaintiff alleges here, the San Diego agreement, was to reinstate the very money. That's not the deal. He's saying that's my understanding of what the deal was. The deal was the deal. The payment was the payment. He wants to get a side payment. He wants to get a side payment. That doesn't change the purchase price that was approved. He wants to get a side payment, which was to put him in the place he would have been done had the original option agreement been performed. I just don't understand how that's calling into question the deal. How does it call into question the deal, Your Honor? Yeah, I just don't follow that. The deal was made between party A and party B and approved by the commission at a set price. Correct. The side deal doesn't change that. The side deal is certainly related to that. Okay, it doesn't change that. Did party B get from party A the amount that the commission approved? Yes. The deal closed. So this is not affecting that. I just don't see where you're getting. Section B says no person shall transfer a gaming license, a direct or indirect real interest, and then it goes on for the other gaming license. Well, this is certainly an indirect real interest in the gaming license. It's not in the gaming license. It's in his agreement that he thought he had with the other party. It's in the casino premium. What the commission determined in December of 2013. I thought his interest is in what he thought he was promised. What he thought he was promised? Yes. What he thought he was promised. No, I'm saying his interest is in what he thought he was promised. Right. By this party. Right. But that's not the gaming license. He's not claiming an interest in the gaming license in claiming breach of a promise to him by one of the parties to the gaming license. Yes, Your Honor. It's the pecuniary interest under the gaming license. The gaming license is what made it $75 million in the eyes of the commission. And what the commission said is you need to remove the casino premium, which is a pecuniary interest under the gaming license. And that's what was made. But he's not trying to recover under that. He's trying to recover for what he said he was promised by a party to that license or to the deal that led to the license. So I guess I'm just having trouble seeing where the text supports it, but I guess you're just telling me I'm reading it wrong. Well, if you don't accept that it violates B, it certainly violates C. The commission may include any reasonable additional requirements to the license conditions. Did it require that there couldn't be a payment of a side deal? Your Honor, I think in light of the determination that the commission made and the concern, I certainly think that the payment of millions of dollars essentially reinstating the very casino premium, the solution that was agreed to in December violates Section C. It violates that condition. It's exactly asking for that which the commission said should not be had. Maybe I just don't understand. Why would Massachusetts have an interest in preventing the following enforcement of a contract? Party A and Party B reach an agreement approved by the commission for a purchase price for the sale. In order to accomplish that, Party A had to defraud Party C to bring about that deal approved by the commission. So Party C now says you defrauded me. I don't care whatever the deal was that's approved. I'm not upsetting that deal. It stands. But you can't defraud a person in Massachusetts to get your way. So I'd like to bring my fraud claim or my breach of contract claim. You're saying we should say because that relates to the ultimate thing approved by the commission, that's somehow against public policy to permit that action to go forward. It just seems surprising to me. Your Honor, as I said before, the legislative intent here was to ensure the integrity of the gaming licensing process. And a secret side deal, which respectfully, Your Honor, contravenes what the commission was trying to do, to wring out the casino premium. And if Wynn was awarded the license to have the land sold for the fair market value, to then reinstate to Mr. Gatnery his portion, his so-called portion of the casino premium, violates the condition and also is not consistent with ensuring the integrity and the public confidence in the integrity of the licensing process. This would be a question of first impression for all purposes here in Massachusetts, correct? Yes. With the understanding of casino statutes and everything. Yes, Your Honor. There is a SJC decision, which we cited in our brief, the Revere versus the Massachusetts Gaming Commission case, 476 Mass. 591. And in that case, the court noted that the legislature had vested a tremendous amount of discretion in the Commonwealth. So I do think that the SJC has already said that the Gaming Commission has a great degree of discretion. To what my colleague, Chief Judge Barron, was saying is this is a private agreement. It doesn't affect the price itself. But what you're suggesting is that because between two other parties there is some attainable legality perhaps, then it affects the overall deal. Yes, Your Honor. How? There's also some textual support in the Chapter 23K, Section 415. The commission has explicit authority to limit a license or finding of suitability or approval for any cause it deems reasonable. You say the reduction in the price was certainly justified under that. There's also Section 110. The power and authority granted to the commission shall be construed as broadly as necessary for the implementation, administration, and enforcement of the chapter. Those tend to support the notion that while this may be a side deal, it undercut what the commission was trying to accomplish here. And your opponent certainly framed his argument that it's perfectly clear this didn't violate public policy in public policy terms and not just pure statutory terms. So I'm sort of back to Judge Helpe's position that maybe it would be better for the SJC to address these questions, including the question of a separate side deal with separate parties. Yes, Your Honor, and thank you for bringing forward that paragraph 10 to Section 1. I had intended to reference that as well. How is a breach of a promise to Party C from Party A, how does that implicate the language that Judge Lentz just quoted? It violates it, Your Honor, because it's a condition that the Gaming Commission imposed on the license application. The condition was that one of the parties to the approved purchase could make a contract and breach it with another party? Of course, Your Honor. That's what your position is. We've accepted for summary judgment purposes the allegation, but we don't. I understand, but that's your position on public policy is that Massachusetts public policy is that the commission has an interest in permitting parties to the purchase that it approves to make promises to others and breach them or to defraud them. The policy here, Your Honor, is that the alleged San Diego agreement is illegal, as I've said before, because it violates both A and B, pardon me, B and C. It also erodes the public policy, and that's the interest of the Commonwealth and the interest of the commission in preserving the integrity of the process. And a secret side deal to reinstate the casino premium, which was not brought to the attention. It's to enforce the promise about what he was to be paid. It's not going to change the premium. It reinstates the premium. No, it does. It literally does not, right? Pardon me? It literally does not, correct? Well, it does not in the following sense. What it does is it enforces a promise that he contends was made only to him. A promise to be made whole, which on the circumstances of this case is an indefinite term. You can't determine, and this is Mr. Gattineri's own words, it's to make me whole. And in his deposition testimony, which was cited by Judge Saylor on page 12 and 13 of Judge Saylor's decision, Mr. Gattineri said, I would probably just do some simple math and have someone with a better math background than I am. I'm not very good with math. And calculate the whatever, the 46.7 at $75 million, and that's what I'm owed. That's what I need to make me whole. You can't do that determination, as Judge Saylor found, because in this case, on these circumstances, make me whole would require a determination of the seller's environmental obligation. In the original option agreement, the $75 million that was to be paid to the seller, the seller had environmental obligations. It is undisputed, may I finish, it is undisputed on this record that the parties never agreed to the seller's environmental obligations. Indeed, Mr. Gattineri himself said, I have no idea what those things are. So even if you were to accept, which we don't, that there was an agreement, it cannot be enforced because the material term of price cannot be determined. It's indefinite. And that's just straight contract law, which this Court can do. Thank you. Any further questions? Yes, if you could very briefly address the taint issue with the ex parte review by the judge of the transcript. Yes, Your Honor. As Your Honor pointed out, the only page that was cited in the decision by Judge Saylor from the so-called new pages in the transcript was a paragraph, which was in our statement of undisputed material facts. And it was not disputed. It was not disputed. We neglected, when we submitted the summary judgment record, to attach that one page. We had the statement with the fact. I believe it was 73, if my memory serves me correct, but it's in our brief. We had a statement of material fact saying exactly what was on that page. We referred to the page, and when we assembled it, we neglected to attach that. So as Your Honor correctly pointed out, that fact and that page was already before the Court, and it was not disputed. And if it's not disputed under the local rule, 56-whatever-it's-in-Massachusetts, it's deemed admitted. It's deemed admitted. So any error is harmless for all purposes. Yes, Your Honor. And the appellant has not pointed out what the appellant would have done differently had the clerk's original email requesting us to provide full copies of two deposition transcripts. And let me ask you, if we were to remand on that ground, and that would be the remedy, counsel's asking for a trial. If we were to remand, would there be another remedy? For example, another judge have the whole summary judgment record and decide on that? Sure. That's a much more reasonable remedy. Recall that the plaintiff had the opportunity to counter-designate whatever pages it chose to from these depositions. For ease of the Court, when we put the exhibits together, we didn't send over the full deposition transcripts. We sent over the particular pages to which we made reference, and then we got the email asking us for the full copy. But since November of 2020, when we filed our motion for summary judgment, the plaintiff had the opportunity then to counter-designate. And as I said, in both his appellate brief and his motion, original motion that was filed in April, at no point has he identified what Mr. Gatnery would have done different or specifically said what additional documentation he would have given the Court. All we did was provide the Court back exactly what the Court asked us for. Thank you. That concludes our argument in this case.